1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

DONALD A. THACKER,

   Trustee-Plainitff-Appellant,

  v.

FEDERAL COMMUNICATIONS
COMMISSION and UNITED STATES OF
AMERICA,

   Defendants-Appellees.

Case No. C04-5681FDB

Bankruptcy Appeal No. 04-008
Bankruptcy No.  98-39048-PBS
Adversary Case No. 03-04274- PBS

ORDER AFFIRMING BANKRUPTCY
MEMORANDUM DECISION

18

19

20

21

22

23

24

25

26

   This matter is before the Court upon Plaintiff-Appellant's appeal of the Bankruptcy Court's Order and Memorandum Decision on Motion to Dismiss Complaint for failure to state a claim of action pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff basis its appeal on three central contentions of err.  Plaintiff asserts the bankruptcy court erred in its conclusion that: (1) §525 of the Bankruptcy Code does not bar the FCC from canceling Plaintiff's license; (2) collateral estoppel did not bar the FCC from litigating the issue of whether or not the interest in Plaintiff's proceeds were eliminated by canceling the licenses; and (3) surplus proceeds obtained from the sale of reauctioned spectrum licenses were not the property of the bankruptcy estate

ORDER - 1

1    The Court, having reviewed the brief of Appellant and its reply, the brief of Appellees, the

2    memorandum decision, records contained in the file herein, and being fully advised finds for the

3    reasons set forth below, that the decision of the Bankruptcy Court is **AFFIRMED.**

4                                                              I.

5    47 U.S.C. §309(j) authorizes the Federal Communication Commission (FCC) to allocate

6    licenses by auction for entrepreneurial or start-up companies.  In 1996 , Magnacom Wireless, LLC

7    (Magnacom) submitted winning bids and purchased seventeen licenses of radio spectrum for

8    personal communications services (PCS).  Because Magnacom qualified under FCC regulations,

9    Magnacom was not required to pay the entire amount it bid for the licenses in one lump sum, but

10   was allowed to make a ten-percent down payment and execute promissary notes of installment

11   payments over a ten-year term.  Pursuant to FCC regulations, the seventeen licenses were granted

12   subject to a condition that Magnacom make timely and full payment of the amount of its winning bid,

13   the failure of which results in automatic cancellation of the licenses.  Magnacom signed installment

14   payment plans and security agreements for each of the licenses.  The security agreement included a

15   specific waiver of any right to the proceeds of any subsequent auction after license cancellation.  As

16   collateral, the FCC took perfected security interest in the licenses.  Magnacom and the FCC later

17   modified the installment payment plans, but retained the language requiring automatic cancellation

18   for failure to make timely and full installment payments.

19   On October 28, 1998, one day before it would have been in default, Magnacom filed for

20   Chapter 11 reorganization.  On May 14, 1999, the bankruptcy court signed an uncontested order

21   granting FCC's motion for declaratory judgment or, in the alternative, relief from the automatic stay.

22   *In Re Magnacom Wireless, LLC.,* (98-39048, No. 45).  Plaintiff contends it strenuously objected to

23   granting declaratory relief, but admits its consent to lifting the automatic stay.  Pursuant to the May

24   14, 1999 order, the FCC was, to the extent required, relieved from the stay imposed by 11 U.S.C.

25   §362, and authorized to pursue "any and all of its remedies, including its right to cancel the defaulted

26   ORDER - 2

1   licenses if such licenses have not already canceled as a matter of law." May 14, 1999 Order at 2.

2   Subsequent to the order, the case was converted to Chapter 7 bankruptcy and a Bankruptcy Trustee

3   was appointed.

4          On January 4, 2000, the FCC filed a proof of claim as an unsecured creditor with a petition

5   date claim of $48,187, 219.73.  On March 14, 2001, the trustee filed an application to allow certain

6   claims, including those of the FCC, and disallow others.  The FCC filed a response and on April 9,

7   2001, the bankruptcy court entered an order allowing claims, including that of the FCC.

8          In December, 2000, and January 2001, the FCC conducted an auction in which it sold

9   reconstituted spectrum licenses repossessed from Magnacom.  Leading up to the new auction, the

10  FCC issued public notices and Notices of Proposed Rulemaking, and ultimately adopted rules

11  governing the new auction.  Magnacom did not file any objections to the FCC's rulemaking

12  proceeding, and did not appeal the final revised auction rules.  Each new license issued as a result of

13  the 2001 auction was granted for a new ten year term ending in 2011.

14         Since the date of Plaintiff's cancellation, the demand for spectrum had changed, and the

15  winning bids for the spectrum licenses in the 2001 auction were far higher than the winning bids in

16  the original 1996 auction.  The reauctioned licenses were sold for an aggregate sales price of

17  $287,050,250.  The winning bidders bid approximately $240 million more than Magnacom's original

18  winning bids.

19         On February 12, 2003, the Trustee filed a motion to reconsider the allowed claim of the FCC

20  on the grounds that the FCC reauctioned the defaulted licenses for substantially more money than

21  the FCC's January 4, 2000 claim.  The bankruptcy court determined that the FCC was not entitled to

22  any distributions from the estate and disallowed the FCC's claim of $48,187,219.73.

23         On December 19, 2003, the Trustee filed a complaint against the FCC for the return of the

24  surplus proceeds.  In the alternative, the Trustee sought a refund of the debtor's down payments for

25  the licenses.  Magnacom contends its other creditors have received only a fraction of Magnacom's

26  ORDER - 3

1   debts to them, and Magnacom's equity holders have not recovered their investments in the company.

2   The FCC moved for dismissal stating all rights to the proceeds ceased with the cancellation of the

3   licences.  The bankruptcy court granted the dismissal on the theory that the government agency has

4   special rights through regulatory powers that ordinary secured creditors do not have.  This Court

5   agrees.

6                                                    II.

7           Jurisdiction over this appeal is pursuant to 28 U.S.C. §158 (a)(1).  In reviewing a bankruptcy

8   court's decision, a district court reviews factual findings for clear error and legal conclusions of law

9   *de novo.  Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.)*, 165 F.3d 1243, 1245 (9th Cir.

10  1999); *Cook, Perkiss, and Liehe v. N. Cal. Collection Serv. Inc.,* 911 F.2d 242, 244 (9th Cir. 1990).

11  A motion to dismiss for failure to state a claim will be denied unless it appears that plaintiff can

12  prove no set of facts which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46

13  (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th

14  Cir. 1986).  All material allegations in the complaint will be taken as true and construed in the light

15  most favorable to the plaintiff.  *NL Indust., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).

16                                                   III.

17  **A.  Collateral Estoppel**

18          Plaintiff invokes issue preclusion as an independent ground upon which the bankruptcy

19  court's decision should be reversed.  This argument fails.

20          Collateral Estoppel bars the relitigation of issues actually adjudicated in previous litigation

21  between the same parties. *Little John v. United States,* 321 F.3d 915 (9th Cir. 2003) (quoting *Clark*

22  *v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir. 1992)).  A party invoking issue preclusion must

23  show: (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was

24  actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation

25  must have been a critical and necessary part of the judgment in the earlier action.  *Id.*  The Supreme

26  ORDER - 4

Court has elaborated on the "actually litigated" requirement, recognizing that issue preclusion is inappropriate where the parties have not had a full and fair opportunity to fully litigate the merits of an issue.  See *Allen v. McCurry,* 449 U.S. 90, 94-95 (1980).

Plaintiff contends issue preclusion applies in this matter because the bankruptcy court's 2003 order disallowing the FCC's $48 million claim against Plaintiff addressed the issue of whether Plaintiff's interest in the spectrum ceased upon cancellation of the licenses.  Plaintiff contends the court ruled that the reauction proceeds satisfied Magnacom's debt to the FCC, precisely because Magnacom retained an interest in those proceeds.  Plaintiff relies on the court's statement:

> The Court is unconvinced by the FCC's argument that the claim may not be reconsidered because the licenses that it subsequently auctioned were different licenses than the ones previously held by the Debtor.  The FCC relies on the fact that the Debtor's licenses were allegedly cancelled, the fact that the FCC is prohibited from reauctioning licenses under 477 U.S.C. 309(j), and the fact that the new licenses had different terms and different spectrum bandwidth configurations.  No matter how labeled, however, the FCC could not have auctioned these licenses to new users, but for the debtor's default.

Reply Brief of Appellant at 24.

Accordingly, Plaintiff urges the Court to conclude that the FCC should not have had the opportunity to relitigate this same issue during the adversary proceeding.  Plaintiff's reliance on the bankruptcy 2003 order is misplaced.  The two issues are not the same.    The court was not deciding the question of whether proceeds from the sale or new licenses were part of the debtor's estate.  Appellee's Brief at 37; September 2, 2003 Order at 6.  The issue at the time was narrowed strictly to whether the court should reconsider the FCC's claim and whether to approve the stipulation:

> The Court recognizes that the [parties] have included briefing on issues that are not necessarily before the Court at this time.  For example, the Movants are taking the position that the estate also has substantial claims against the FCC for the $238 million surplus.  The Court simply concludes that the FCC is not entitled to any further claim against the estate for the $48,187,219.73.

Memorandum Decision at 7.

ORDER - 5

1    In reaching its conclusion, the court expressly explained that it was not relying on

2    Plaintiff's argument.  Instead, the court relied upon the FCC's policy of not seeking to collect

3    further on the outstanding debt of a defaulted licensee if the subsequent auction for the

4    spectrum to a new licensee covers the amount of the original outstanding debts.  Appellees

5    Brief at 7 citing *Leonard J. Kennedy, Esq.,* 11 FCC Rcd. 21, 572.  Accordingly, the Court

6    affirms the bankruptcy court's decision that the FCC was not barred by the doctrine of

7    collateral estoppel from arguing that cancellation of the licenses severed the estate's interest

8    in the proceeds of the reauctioned licenses.

9    **B.  11 U.S.C. §525 Does Not Apply**

10   Plaintiff contends the bankruptcy court erroneously ruled that 11 U.S.C. §525 did not

11   apply.  11 U.S.C. §525 reads in pertinent part:

12   [A] governmental unit may not deny, revoke, suspend or refuse to renew a license... to... a

13   person that is... a debtor under this title... solely because such ... debtor has not paid a debt

14   that is dischargeable.  11 U.S.C. §525.

15   Plaintiff contends §525 prevents unilateral revocation of a license for failure to pay a

16   debt that is "dischargeable" in bankruptcy and relies upon the Supreme Court decision in

17   *FCC v. NextWave Personal Communications, Inc.,* 537 U.S. 300 (2003), which held that

18   §525 prohibited the FCC from revoking a license paid through the installment program solely

19   because of a failure by a bankruptcy debtor to pay its debts.  *Id.* at 307.  Plaintiff contends, at

20   the time of petitioning for Chapter 11 bankruptcy, Plaintiff was not in default of payment for

21   the licenses.  Furthermore, Plaintiff contends that §525 does apply because Plaintiff did not

22   convert the action to Chapter 7 bankruptcy until after the May 1999 Order had canceled the

23   the licenses.

24   The bankruptcy court concluded that §525 did not apply because Plaintiff, as a

25   corporation, had no dischargeable debts.  Under the plain language of 11 U.S.C. §727(a)(1),

26   ORDER - 6

1   only an individual is eligible to receive a discharge.   Plaintiff asserts the bankruptcy court's

2   decision is erred and contends that §525's language indicates that the test is whether

3   Magnacom's debt to the FCC is the "kind of debt" that can be discharged, not whether

4   Magnacom is the "kind of debtor" entitled to a discharge.   Plaintiff urges this Court to

5   conclude that §525 applies because Plaintiff's debt is "dischargeable, " that is, capable of

6   being discharged.

7       Plaintiff's interpretation of §525 is misplaced.   See *In re Tri-R Builders, Inc.,* 86 BR

8   138 (ND Ind 1986) (Debtor that is corporation is not entitled to discharge under 11 U.S.C.S.

9   §727); *In re Goodman,* 81 BR 786 (WD NY 1988) (Corporations are not entitled to

10  discharge in Chapter 7 case under 11 U.S.C.S. 727(a)(1); *NLRB v. Better Bldg. Supply*

11  *Corp.,* 837 F.2d 377 (9th Cir. 1988) (partnerships and corporations may not, under 11

12  U.S.C.S. §727, discharge their debts in liquidation proceedings); *In re Liberty Trust Co.,* 130

13  BR 467 (WD Tex 1991) (Chapter 7 corporate debtor has no existence or life outside of

14  bankruptcy estate, but rather is defunct, because corporation is not entitled to discharge

15  under 11 U.S.C.S. §727; therefore, it may not assert rights to causes of action or assets

16  abandoned by Chapter 7 trustee); *In re Gulfstream Marina, Restaurant & Motel, Inc.,* 2 BR

17  26 (SD Fla 1979) (11 U.S.C. §727 provides discharge only for individuals because bankrupt

18  corporation, unlike bankrupt natural person, has virtually no prospect of future property

19  accumulation...).   It is clear that §525 applies to individuals, not corporations.   Accordingly,

20  this Court sees no reason to dispute the bankruptcy court's decision.

21      Of equal importance, is the fact that Plaintiff consented to the lifting of the stay to

22  allow the FCC to exercise its regulatory rights of cancellation:  "The Debtor consented to an

23  order lifting the automatic stay because it was believed that Magnacom owed more to the

24  FCC than the market value of the collateral (i.e., the licenses) at that time..."  Brief of

25  Appellant at 7.  As the bankruptcy court pointed out in its decision, it was not until several

26  ORDER - 7

1    years later when the FCC reauctioned the licenses for an amount significantly greater than the

2    original debt that this argument was first raised.    At the hearing, Plaintiff had ample

3    opportunity to object to the lifting of the stay to avoid cancellation, assuming the FCC had

4    the right to do so under non-bankruptcy law; however, for its own reasons, Plaintiff chose

5    not to do so.  In fact, Plaintiff did not exercise any of its rights to avoid cancellation.  Plaintiff

6    did not utilize the grace period afforded under the regulation; Plaintiff did not appeal the

7    order lifting the stay; and Plaintiff did not contest the re-auction.  This Court is not persuaded

8    by Plaintiff's after-the-fact argument that cancellation was prohibited.  Accordingly, the

9    Court affirms the bankruptcy court's decision that §525 does not apply.

10   **C. Surplus Proceeds**

11       Plaintiff asserts that the bankruptcy court erred in concluding the FCC's regulatory

12   cancellation of the licenses eliminated Plaintiff's property interests in the surplus proceeds of

13   the re-auction.  Plaintiff contends the proceeds are traceable to Plaintiff's licenses, that is, but

14   for Plaintiff's default, the licenses would not have cancelled and the spectrum would not have

15   been reauctioned.  Accordingly, Plaintiff urges this Court to conclude that the regulatory

16   cancellation ended Plaintiff interests and permitted use of the licenses only– cancellation did

17   not end Plaintiff's rights to the proceeds.  Plaintiff relies on the fundamental tenet of debtor-

18   creditor law that a secured creditor has an interest in the proceeds of collateral only to the

19   extent necessary to pay off the debt owned to that creditor, which in this case was $48

20   million.   Plaintiff contends, once the secured debt was paid in full, all surplus proceeds from

21   the collateral should have reverted to Plaintiff.

22       The issue of a debtor's right to the surplus proceeds is one of first impression.  There

23   are no FCC regulations and nothing in the Federal Communications Act (FCA) which

24   governs this issue.   Accordingly, the bankruptcy court relied upon the Supreme Court

25   *NextWave* decision which recognized the FCC's distinctive roles of creditor and regulator:

26   ORDER - 8

1
2
3
4
5

The FCC initially participated in the bankruptcy proceeding as a creditor. See, e.g., *In re NextWave Persona Comm. Inc.,* 241 B.R. 314 (Bkrtcy Ct. SDNY 1999). However, after NextWave prepared a plan of reorganization the FCC asserted that the licenses had been automatically cancelled and gave notice of its intent to reauction them The Second Circuit treated this decision as "regulatory,' and thus outside the scope of the Bankruptcy Court's jurisdiction.  See *in re FCC,* 217 F.3d 125, 139, 136 (2000).  The decision by the D.C. Circuit recognized and seemingly approved that distinction.  See 349 U.S. App. D.C. 53 (2001).

6  *NextWave,* at 842 n.5.

7  The bankruptcy court agrees with Plaintiff's argument that Plaintiff may have been entitled to

8  the proceeds had the FCC reclaimed the licenses as a secured creditor.  However, that was

9  not the case.  Accordingly, this Court finds no reason to dispute the bankruptcy court

10  decision.

11        Similar to the actions of the FCC in *NextWave,* the FCC in the case at bar may have

12  initially participated in the bankruptcy proceeding as a creditor; however, upon requesting the

13  court to lift the stay to exercise its rights under the law outside of bankruptcy, the FCC was

14  clearly acting under its regulatory function.  The bankruptcy court concluded that

15  determining the right to the proceeds upon reauction of a cancelled license is a regulatory

16  function and therefore its review is outside the power of the bankruptcy court.  See *In re*

17  *FCC,* 217 F.3d 125 ("We expressly deferred to the FCC's 'expert judgment as to the course

18  that would best promote congressional objectives and serve the public interest'" ).   The

19  Court agrees with the bankruptcy court decision.  Accordingly, the Court concludes that

20  cancellation of the licenses eliminated not only Plaintiff's security interests in the property,

21  but also eliminated whatever rights Plaintiff had in the surplus proceeds of the re-auction as

22  well.

23

24

25

26  ORDER - 9

1    ACCORDINGLY,

2         IT IS ORDERED:

3         (1)    The Court affirms the Memorandum Decision on Motion to Dismiss

4                Complaint;

5         (2)    The adversary complaint is dismissed pursuant to Fed. R. Civ. Pro. 12 (b)(6);

6         (3)    The Clerk is directed to send copies of this Order to Plaintiff-Appellant,

7                Defendants- Appellees, and to the Hon. Paul B. Snyder.

8

9    DATED this  22nd  day of June, 2005.

10                                          _____

11                                          FRANKLIN D. BURGESS
                                            UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER - 10